**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 11 C 9237 |
| v. ) | |
| ) | Judge George W. Lindberg |
| GLENN D. SMITH ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant Glenn D. Smith's motion to vacate, set aside, or correct sentence by a person in federal custody, pursuant to 28 U.S.C. § 2255. For the reasons stated below, defendant's motion is denied.

**I.** *Background*

The evidence at trial[1] established that on May 6, 2005, a confidential informant ("CI") under the supervision of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") met with defendant. Before the meeting, ATF agents gave the CI $500 in buy money and outfitted him with a audio recorder and a transmitter. During the meeting, defendant sold the CI a plastic baggie containing a "rock like chunk substance" that a forensic scientist later identified as 10.9 grams of a mixture that included cocaine base.

During the meeting, the CI also asked defendant for a gun. Defendant responded that the CI would have to "come around [his] crib" to get it from defendant's "girl." Defendant described the gun to the CI as "a Mossberg," and stated that "[t]here's bullets and everything." Defendant told the CI that he was going to call his girl and tell her that the CI was going to come and get it. Defendant then made a call, in which he said, "Hey, hey babe. Hey, Mike gonna

---

[1] Judge David H. Coar presided over defendant's jury trial; the case was reassigned following Judge Coar's retirement.

come and grab that . . . The, um, um, the, the, um, gun in the closet, in the front closet. In the pillow case." Defendant told the CI that "She gonna be at the entr . . . we in the, um, you know the one we at. All the way back . . . On the second floor." The CI then went to an apartment building at 6044 South Prairie Avenue in Chicago, and spoke with a woman there. Shortly thereafter, ATF agents observed the CI walking down the street with a large couch cushion balanced on his head. The agents recovered a loaded Mossberg shotgun from the cushion.

A jury convicted defendant of distributing five or more grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant was sentenced to concurrent 120- and 110-month prison terms.

Defendant filed a direct appeal, in which he argued that the evidence was insufficient to support his conviction for being a felon in possession of a firearm, and that his sentence for the drug charge violated the Fair Sentencing Act and the Eighth Amendment. *See U.S. v. Smith*, 413 Fed. Appx. 912, 914-15 (7th Cir. 2011). The Court of Appeals affirmed defendant's conviction and sentence on March 21, 2011. *See id.* at 915. Defendant filed the instant Section 2255 motion on December 28, 2011.

**II.** *Analysis*

In his Section 2255 motion, defendant argues that: (1) the government failed to prove that defendant distributed crack cocaine, as charged in the indictment; (2) the trial court gave the jury instructions that improperly reduced the government's burden of proof; (3) the trial court improperly admitted the recording and transcript of the CI's conversation with defendant's alleged girlfriend; and (4) defendant was denied his right to a jury that reflected a fair cross-section of the community. He further argues that his appellate counsel provided ineffective

assistance by failing to raise these issues on direct appeal.

Relief under Section 2255 is "an extraordinary remedy" that is available only when "the sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *See Almonacid v. U.S.*, 476 F.3d 518, 521 (7th Cir. 2007); 28 U.S.C. § 2255(a).

In order to establish that his appellate counsel failed to provide effective assistance of counsel, defendant must show that his attorney's performance fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). An appellate attorney's performance is constitutionally deficient only if he or she fails to raise a "significant and obvious" issue that is "clearly stronger" than the issues raised on appeal. *Suggs v. U.S.*, 513 F.3d 675, 678 (7th Cir. 2008). Defendant must also show that but for his appellate counsel's deficient performance, there is a reasonable probability that the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 694; *Suggs*, 513 F.3d at 678. "[C]ounsel is not required to raise every nonfrivolous issue on appeal." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010).

  A. *Proof of Distribution of Crack Cocaine*

Defendant first contends that the government failed to prove that he distributed crack cocaine (as opposed to powder cocaine), as charged in the indictment. At trial, the forensic chemist testified that the exhibit identified as the suspected drugs was a "light brown powder." However, the forensic chemist also testified that when he received the sample, it was in a "chunkier rock like form," and that after he separated a small portion out, he ground the larger

portion up for testing. The chemist testified that since he first observed it, the smaller portion had "broken down some" and "become more of a powder," and explained that such a change can happen over time. The chemist testified that his analysis revealed that the sample contained cocaine base, procaine, phenacetin, and sodium bicarbonate. The chemist also testified that sodium bicarbonate is a common base that is used to convert cocaine hydrochloride (powder cocaine) to cocaine base, and that cocaine base is typically a cream to light brown color, and is in a chunky form rather than a powder. The forensic chemist was qualified to testify at trial as an expert, without objection by the defense.

ATF Special Agent Christopher Labno testified that when he received the substance from the CI, it was "more of a rock like chunk substance." Labno testified that based on his specialized experience, the substance appeared to be crack cocaine because of its off-white color and its chunky consistency (although by the time of trial it had been broken down into smaller pieces because it had been ground up). Labno testified that the substance differed from powder cocaine because it was "much more chunky" and "much darker."

The court finds that the government presented ample evidence that the substance defendant sold to the CI was a controlled substance, and more specifically that it was "mixtures and substances containing cocaine base in the form of crack cocaine," as charged in the superseding indictment. In addition, since this issue lacked merit, it was not "clearly stronger" than the issues raised on appeal, and appellate counsel's decision not to raise it was not prejudicial.

   **B.**  ***Jury Instructions***

Next, defendant argues that the trial court erred when it gave the government's proposed

4

jury instructions 16 and 20, which stated that it did not matter whether defendant knew the substance contained a particular type of controlled substance, and that it is sufficient that defendant knew that it was some kind of prohibited drug. Defendant argues that these instructions improperly reduced the government's burden of proof.

The court finds that these instructions were accurate statements of law. "[A]ctual knowledge of the identity of a drug is not an element of 21 U.S.C. § 841(a)." *U.S. v. Barlow*, 310 F.3d 1007, 1012 (7th Cir. 2002). Rather, "Section 841(a) requires only that the defendant know that he possesses a controlled substance; it does not require that he know the type of controlled substance he possesses." *Id*. Since these jury instructions were proper, appellate counsel did not provide ineffective assistance by electing not to challenge them on direct appeal.

  **C.**  *Admission of Recording and Transcript*

Defendant next argues that the trial court erred in admitting the recording and transcript of the conversation between the CI and defendant's alleged girlfriend. Defendant also argues that his appellate attorney's performance was deficient because she failed to raise this issue on direct appeal.

In the recording of the conversation at issue, the CI and the woman had the following exchange:

  CI:  [Whistles.]

  Female:  Here I come. Here I come.

  CI:  Okay. Huh? You comin' down? [Ringtones.]

  Female:  Yeah.

  CI:  All right.

       . . . .

| | |
|---|---|
| Female: | [Unintelligible] here? |
| CI: | Yeah. |
| Female: | Where he at? |
| CI: | Um, he's runnin' around with a [unintelligible], uh, with somebody in a car. |
| Female: | Cause somebody lookin' for him for [unintelligible]. Where your car at? You want me carry it? |
| CI: | No. |
| Female: | 'Cause it's in this big ol' thing. |
| CI: | Is it? You can't put it in nothin' else? |
| Female: | Nope. And I ain't finna take it out. |
| CI: | Okay. Give it here, I'll take it like this. |
| Female: | Take it like – |
| CI: | I'm just around the corner. |
| Female: | You finna go home? |
| CI: | Yeah. |
| Female: | Your car around the corner? |
| CI: | I live around the corner. |
| Female: | Oh. |
| CI: | You want me bring your pillow back? |
| Female: | Uh that's what [unintelligible] put it in. |
| CI: | Oh, okay. |
| Female: | 'Cause [unintelligible] -- |

| | |
|---|---|
| CI: | Thank you. Okay. |
| Female: | Who [unintelligible]? |
| CI: | He in the green car. |
| Female: | [Unintelligible] |
| CI: | He, he in the, I don't, I don't know the dude. |
| Female: | [Unintelligible] boy with the bald head? |
| CI: | I didn't pay no attention to him. |
| Female: | All right. Did he talk to you on, he talk to you on your phone? |
| CI: | Yeah. |
| Female: | All right. |

Citing *Crawford v. Washington*, 541 U.S. 36 (2004), defendant argues that because the woman in the recording did not testify at trial, the admission of her statements violated his Confrontation Clause rights. In *Crawford*, the Supreme Court barred the use of testimonial hearsay at trial, unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *See Crawford*, 541 U.S. at 68. However, *Crawford* does not limit the use of non-hearsay statements, such as co-conspirator statements. *See U.S. v. Jenkins*, 419 F.3d 614, 618 (7th Cir. 2005). The statements of a co-conspirator are admissible non-hearsay if the government establishes that a conspiracy existed, the defendant and the declarant were members, and that the statements were made during the course or, and in furtherance of, the conspiracy. *See U.S. v. Rea*, 621 F.3d 595, 604 (7th Cir. 2010); Fed. R. Evid. 801(d)(2)(E). This is true even if the co-conspirator is not charged in the case. *See U.S. v. Wantuch*, 525 F.3d 505, 511 n.3 (7th Cir. 2008) ("the statements of unindicted coconspirators are admissible as non-hearsay . . .");

7

*U.S. v. Mahkimetas*, 991 F.2d 379, 382-84 (7th Cir. 1993) (admitting statements of an uncharged co-conspirator).

The court concludes that the admission of the woman's recorded statements did not violate the Confrontation Clause because her statements were not hearsay. The government established prior to trial that the woman made the statements during the course of the conspiracy relating to the gun transaction and in furtherance of that conspiracy. Since the admission of the woman's statements did not violate *Crawford*, defendant's appellate counsel did not provide ineffective assistance by not raising the issue on direct appeal.

In any event, most of the conversation was offered for the purpose of providing context, rather than for the truth of the statements, and did not constitute hearsay even if the co-conspirator exception to the hearsay rule did not apply. *See U.S. v. Macari*, 453 F.3d 926, 941 (7th Cir. 2006) (statements are not hearsay when they are offered for context, rather than for the truth of the matter asserted). The only part of the conversation that the government used for its truth was the woman's statement, "Uh that's what [unintelligible] put it in," which the government argued showed that someone other than the woman put the gun in the cushion.

Even if the trial court had erred in admitting the statements of the woman, the error would have been harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (noting that Confrontation Clause violations are subject to harmless error review). The portion of the recording that suggested that someone other than the woman had put the gun in the cushion was partially unintelligible and did not identify defendant as the person who had done so. Without the statements of the woman, the evidence presented to the jury still showed that defendant made a telephone call in which he instructed his "girl" to give the CI a loaded Mossberg gun in a

"pillowcase," the CI then went to a residence and met with a woman, and shortly thereafter emerged with a loaded Mossberg shotgun in a couch cushion. The statements of the woman were not necessary to prove that defendant constructively possessed the gun. In addition, even if the woman's statements were inadmissible, there was not a reasonable probability that the outcome of the appeal would have been different if appellate counsel had raised the issue.

Defendant also argues for the first time in his reply brief that the trial court erred in admitting evidence of defendant's conversation with his girlfriend. This argument is waived because defendant failed to raise it in his petition. *See Wright v. U.S.*, 139 F.3d 551, 553 (7th Cir. 1998). In any event, the argument would fail on the merits. This evidence, consisting of defendant's side of a telephone conversation, was admissible as a statement of a party opponent. *See* Fed. R. Evid. 801(d)(2)(A).

**D.** *Jury Selection*

Finally, defendant argues that his jury did not reflect a fair cross-section of the community because only 2 of the 38 prospective jurors were African American, and the jury pool excluded non-registered voters.[2] Criminal defendants have a Sixth Amendment right to be tried by "an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 130 S. Ct. 1382, 1387 (2010). In order to establish a *prima facie* violation of the fair cross-section requirement, a defendant must show that: "(1) a group qualifying as 'distinctive' (2) is not fairly and reasonably represented in jury venires, and (3) 'systematic exclusion' in the jury-selection process accounts for the under-representation." *Id*. at 1392

---

[2] In his reply brief, defendant clarifies that, contrary to his position in his petition, he does not contend that *Batson v. Kentucky* applies in this case.

Case: 1:11-cv-09237 Document #: 11 Filed: 03/08/12 Page 10 of 11 PageID #:77

(quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). "Defendants are not entitled to a jury of any particular composition, so long as there is a fair process which generates an impartial jury." *U.S. v. Raszkiewicz*, 169 F.3d 459, 462 (7th Cir. 1999). Therefore, "the makeup of any given venire is not significant, provided all rules for selection have been observed." *U.S. v. Duff*, 76 F.3d 122, 125 (7th Cir. 1996).

Jury pools in the Northern District of Illinois are selected pursuant to the District's Plan for Random Selection of Jurors, available at "http://www.ilnd.uscourts.gov/press/ILNDJuryPlan.pdf". Under this plan, jurors are randomly selected from voter registration lists. *See id.* The Court of Appeals has upheld the use of voter registration lists to select a venire, even if doing so results in a complete lack of African-Americans, where the venire is "randomly selected from voter lists pursuant to an authorized plan." *See U.S. v. Neighbors*, 590 F.3d 485, 491 (7th Cir. 2009) (citing *U.S. v. Guy*, 924 F.2d 702, 706 (7th Cir. 1991)); *see also U.S. v. Smith*, 223 F.3d 554, 569 (7th Cir. 2000) ("We have found before that there is nothing wrong with the use of voter rolls to select a venire"). The court concludes that defendant has not shown that the process used to select the venire systematically excluded African Americans. Accordingly, defendant's appellate attorney did not provide ineffective assistance by not raising a fair cross-section issue on direct appeal.

E.   *Request for Evidentiary Hearing*

The court denies defendant's request for an evidentiary hearing because the record conclusively shows that defendant is not entitled to relief under Section 2255. *See Hutchings v. U.S.*, 618 F.3d 693, 699-700 (7th Cir. 2010); 28 U.S.C. § 2255(b).

III.   *Certificate of Appealability*

Because the court is entering an order adverse to defendant, the court must determine whether to grant him a certificate of appealability. *See* Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. A certificate of appealability should issue only if the movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). That is, defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court finds that defendant has not met this burden, and declines to certify any issues for appeal.

**ORDERED:** The motion to vacate, set aside, or correct sentence [1] is denied. The court declines to certify any issues for appeal. Case terminated.

ENTER:

George W. Lindberg
Senior United States District Judge

DATED: March 8, 2012